UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MATTHEW PENNING,

             Plaintiff,

v.

HUDSON MEDIATION SERVICES, INC.
and RAISHAWN L. MORRIS,

             Defendants.

_____/

COMPLAINT

## I.       Introduction

1.      This is an action for damages brought against debt collectors for violating the

Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, Driver's Privacy

Protection Act of 1994 ("DPPA"), 18 U.S.C. § 2721 *et seq.,* Michigan Regulation of Collection

Practices Act ("MRCPA"), M.C.L..§ 445.251 *et seq.,* and Michigan Occupational Code

("MOC") M.C.L. § 339.901 *et seq.,* and for invading plaintiff's privacy.

2.      Defendants, along with other entities and individuals to be identified in discovery,

are involved in a fraudulent and ongoing scheme whereby they have conspired to use false

representations and threats to coerce the payment of money from consumers across the country

who allegedly have failed to repay small, high interest rate loans.  This scheme, and similar ones

operated by seemingly countless entities located in and around Los Angeles, California,

Jacksonville, Florida, Buffalo, New York, Atlanta, Georgia, Charlotte, North Carolina, and Rock

Hill, South Carolina, are based on the use of a script, sometimes known as "The Shakedown" or

"The Shake," that falsely threatens the consumer with litigation, derogatory credit reporting, and other adverse consequences, unless the consumer immediately makes a payment to the caller. Often times the perpetrators falsely inflate the amount of the alleged debt. Often times the consumer is falsely accused of having committed a crime.  Often times the debt is time-barred. Often times, the consumer's personal, financial and account information has been stolen, sold and resold to multiple parties, such that the caller does not own or otherwise have any right to collect the account.  Often times, the loan has been repaid or otherwise previously resolved and there is no debt owed.  When sued for violating the FDCPA, most of the entities default, accumulate default judgments, and continue to operate under a progression of limited liability companies, with listed "business" addresses that are nothing more than rented private mail boxes.

      3.      The use of these unlawful debt collection practices is epidemic.  See, for example, the Complaint for Permanent Injunction and Other Equitable Relief filed on February 24, 2014 in the United States District Court, Western District of New York (Buffalo), Case No. 1:14-cv-122, by the Federal Trade Commission against Federal Check Processing, Inc. and fourteen other debt collection entities defendants.  See also the complaint filed by the United States of America against Williams Scott & Associates, LLC *et al.,* U.S. District Court, Southern District of New York, Case No. 1:14-mj-02546-UA, in which the government alleged that the defendants located in Norcross, Georgia have continuously engaged in a conspiracy to commit wire fraud and violated the FDCPA and other laws, through a loan collection scheme that is indistinguishable from the ongoing scheme being perpetrated by the defendants as alleged in this complaint.  The United States Department of Justice, the Federal Bureau of Investigation, the Federal Trade Commission, the Consumer Financial Protection Bureau, the attorneys general of virtually every

state, and the Better Business Bureau all have issued press releases that warn consumers about this ongoing scam.

4.       On November 4, 2015, the Federal Trade Commission and other law enforcement authorities around the country announced the first coordinated federal-state enforcement initiative targeting deceptive and abusive debt collection practices. The "Operation Collection Protection" initiative is described by the FTC as a nationwide crackdown by federal, state, and local law enforcement authorities against collectors who use illegal tactics such as harassing phone calls and false threats of litigation, arrest, and wage garnishment. The initiative targets debt collectors who attempt to collect so-called phantom debts – phony debts that consumers do not actually owe.  See www.ftc.gov/news-events/press-releases/2015.

5.       Even more recently, the federal government has begun to criminally indict individuals involved in the type of scam that is described in this complaint. See, for example, the forty-one count indictment filed on March 3, 2016 by the United States of America against Alan Ceccarelli, in the United States District Court, Western District of New York (Buffalo), Case No. 1:16-cr-00024-EAW-HKS-1, 122, with charges that include Wire Fraud and Aggravated Identity Theft. See also, Consumer Financial Protection Bureau v. Douglas MacKinnon et al., U.S. District Court, Western District of New York (Buffalo), Case No. 1:16-cv-00880FPG, filed November 2, 2016, in which the government alleges that the defendants cheated thousands of consumers out of millions of dollars by running the same type of scam that is described in this complaint.

## II.   Jurisdiction

6.       This Court has jurisdiction under 15 U.S.C. § 1692k(d) (FDCPA), 18 U.S.C. §

2724(a) (DPPA), and 28 U.S.C. § 1331. This Court has supplemental jurisdiction regarding plaintiff's state law claims under 28 U.S.C. § 1367.  Venue in this judicial district is proper because the pertinent events took place here.

III.    **Parties**

7.    Plaintiff Matthew Penning is an adult, natural person residing in Kent County, Michigan.  Mr. Penning is a "consumer" and "person" as the terms are defined and used in the FDCPA. Mr. Penning is a "person"as the term is defined and used in the DPPA. Mr. Penning is a "consumer," "debtor" and "person" as the terms are defined and used in the MRCPA and MOC.

8.    Defendant Hudson Mediation Services, Inc. ("HMS") is an active New York corporation, incorporated on July 25, 2016. HMS purportedly does business at 15 Webster Street, North Tonawanda, New York 14210, with offices on the first and third floor of the building. The registered agent for HMS is Raishawn L. Morris, 42 Carmel Road, Apartment 2, Buffalo, New York 14214-1006. HMS uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. HMS regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. HMS is a "debt collector" as the term is defined and used in the FDCPA. HMS is a "regulated person" as the term is defined and used in MRCPA. Alternatively, HMS is a "collection agency" and "licensee" as the terms are defined and used in MOC.

9.    HMS also does business under multiple, unregistered names, including: Essex Mediation Services, LLC; Essex Mediation Services; EMS, LLC; and EMS.

10.    HMS directly and indirectly participated in the efforts to collect an alleged debt from Mr. Penning that are described in this complaint.

11.    Defendant Raishawn L. Morris, also known as Sean Morris, also known as Shawn

4

Morris, is a natural person, age 42, purportedly residing at 42 Carmel Road, Apartment 2,

Buffalo, New York 14214-1006. Mr. Morris has a cellular telephone number, 716-289-5833,

which he uses to conduct his debt collection operation. Mr. Morris is an owner, officer, director,

manager, employee and agent of defendant HMS. Mr. Morris uses interstate commerce and the

mails in a business the principal purpose of which is the collection of debts. Mr. Morris regularly

collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or

due another. Mr. Morris is a "debt collector" as the term is defined and used in the FDCPA. Mr.

Morris is a "regulated person" as the term is defined and used in the MRCPA. Alternatively, Mr.

Morris is a "collection agency" and  "licensee" as the terms are defined and used in the MOC.

12.     Mr. Morris (a) created the collection policies and procedures used by HMS its

employees and agents, in connection with their common efforts to collect consumer debts, (b)

managed or otherwise controlled the daily collection operations of HMS, (c) oversaw the

application of the collection policies and procedures used by HMS and its employees and agents,

(d) drafted, created, approved and ratified the tactics and scripts used by HMS and its employees

and agents to collect debts from consumers, including the tactics and scripts that were used to

attempt to collect an alleged debt from Mr. Penning as stated in this complaint, (e) ratified the

unlawful debt collection practices and procedures used by HMS and its employees and agents in

connection with their common efforts to collect consumer debts, and (f) had knowledge of,

approved, participated in, and ratified the unlawful debt collection practices used by HMS and its

employees and agents in attempts to collect an alleged debt from Mr. Penning as stated in this

complaint.

13.     Mr. Morris directly and indirectly participated in the efforts to collect an alleged

debt from Mr. Penning that are described in this complaint.

14.     Defendants and their employees and agents send and receive email from multiple email addresses when collecting alleged debts from consumers, including: hms.admn@mail.com and ems.admn@mail.com.

15.     Defendants and their employees and agents use multiple telephone numbers when collecting alleged debts from consumers, including: 844-249-4278, 844-365-7206 and 844-365-7208. The Responsible Organization for the telephone numbers is Level 3 Communications. All three of the listed numbers were re-assigned to the current subscriber on April 4, 2017. The end-subscriber information for the telephone numbers will be obtained in discovery.

16.     Telephone calls made during non-business hours to the three listed numbers are answered with the same pre-recorded greeting stating: "Hello, you've reached the Legal Outsourcing Division. No one is available to take your call. Please leave a message and someone will return your call immediately."

17.     All defendants, and other entities to be identified in discovery and named as additional defendants in this lawsuit, are intricately bound together and combine their efforts in a joint and common enterprise and use concerted attempts to collect debts allegedly owed by consumers throughout the United States. Defendants and the other entities operate collectively and together, in such as way that they are collecting debts for the benefit of each other, and making each participant jointly and severally for the unlawful acts of each of the other participants.

18.     On May 11, 2015, the Federal Trade Commission filed a Complaint for Permanent Injunction and Other Equitable Relief in the United States District Court for the Western District of New York, Case No. 1:15-cv-00421-FPG, against the following entities: Premier Debt Acquisitions LLC, Prizm Debt Solutions LLC, Samuel Sole and Associates, LLC,

Charles Glander, and Jacob E. Kirbis. The FTC alleged that the defendants had operated a debt collection scam using the same tactics that are described in this complaint, and had defrauded thousands of consumers out of millions of dollars. On January 7, 2016, the Court entered a Stipulated Final Order for Permanent Injunction and Settlement of Claims, that included a judgment against defendants in the amount of $2,229,756.00, and permanently restrained and enjoined all defendants from participating in debt collection activities. Importantly, the defendants in the FTC action were operating their debt collection scheme from office space located at 15 Webster Street, North Tonawanda, New York 14210, which is the same location from which the defendants in this lawsuit are now operating their debt collection scheme. It will need to be determined in discovery whether or not the defendants named in the FTC action have had any participation in the unlawful efforts to collect an alleged debt from Mr. Penning that are described in this complaint.

19.    An entity that itself meets the definition of debt collector is liable for the unlawful collection activities carried out by another debt collector on its behalf. *See, e.g., Pollice v. National Tax Funding, L.P.,* 225 F.3d 379, 404-06 (3d Cir.2000); *Janetos v. Fulton Friedman & Gullace, LLP,* 825 F.3d 317, 325-26 (7th Cir.2016); *Fox v. Citicorp Credit Services, Inc.,* 15 F.3d 1507, 1516 (9th Cir.1994); *Wadlington v. Credit Acceptance Corp.,* 76 F.3d 103, 108 (6th Cir.1996); *Verburg v. Weltman, Weinberg & Reis Co., LPA et al.,* No. 1:13-cv-1328, 2016 WL 1273349, *7-8 (W.D. Mich. Mar. 28, 2016).

20.    A shareholder, owner, officer, member, manager, employee or agent of a corporate debt collector can be held liable for violating the FDCPA, without piercing the corporate veil, by being directly involved in the day-to-day operation of the company, including the training and managing of employees, reviewing or supervising the review of accounts,

materially participating in the activities of the company, supervising collection activities,

overseeing compliance with applicable collection laws, ratifying unlawful acts, and the like, for

the reason that each such individual is himself a "debt collector" within the statutory definition,

namely, each is a "person" in a business, "the principal purpose of which is the collection of any

debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or

asserted to be owed or due another." 15 U.S.C. § 1692a(6). *See Kistner v. Law Offices of*

*Michael P. Margelefsky, LLC,* 518 F.3d 433, 435-438 (6th Cir. 2008); *Russell v. Goldman Roth*

*Acquisitions, LLC,* 847 F.Supp.2d 994, 1004-06 (W.D.Mich. 2012).

## IV.    Facts

21.    Beginning in or about 2011, plaintiff Matthew Penning became financial strapped

and periodically went on the internet in efforts to borrow small amounts of money via in what is

commonly known as a payday loan. Mr. Penning accessed websites that purported to be a payday

lender and provided personal information, including his name, date of birth, residential address,

social security number, email address, name of his banking institution, bank account number, and

place of employment.

22.    The internet website to which Mr. Penning provided his personal information

were not operated by the actual payday lenders, and instead were lead generators or lead brokers,

virtually all controlled by a person named Joel Tucker.

23.    According to the Federal Trade Commission, Mr. Tucker and his companies sold

the "leads" to multiple payday lenders who then used that consumer data to engage in elaborate

and fraudulent schemes to bilk thousands of consumers out of hundreds of millions of dollars. In

one common variation of the scheme, the payday lender used the information provided by Mr.

Tucker and his companies to deposit small amounts of money (typically $200 to $300) in the consumer's bank account without the consumer's consent. The payday lender would then make unauthorized withdrawals (typically $60 to $90) from the consumer's bank account every two weeks for purported "payment deferment charges," such that the loan's principal was never reduced. The withdrawals would continue indefinitely. If the consumer contacted his bank to have the withdrawals reversed, the payday lender would provide the bank with falsified loan documents. If the consumer closed his bank account, the payday lender would sell the bogus account to a debt buyer or place the bogus account for collection with a debt collector.

24.     Mr. Tucker assigned Mr. Penning and his personal financial information a customer number of 203074597.

25.     In or about September of 2011, Mr. Tucker sold Mr. Penning's personal and financial information to an entity named GTI Holdings LLC ("GTI").

26.     In or about September of 2011, and without Mr. Penning's consent, GTI originated a phony payday loan in Mr. Penning's name and assigned the phony transaction an account number of 203074597.

27.     When Mr. Penning surmised that he had been cheated by Mr. Tucker and GTI, Mr. Penning refused to pay money to Hydra and he closed his bank account to prevent GTI from making any unauthorized withdrawals of his funds.

28.     Mr. Penning denies owing any money to GTI or anyone else in connection with the phony payday loan. Mr. Penning is a victim of credit identity theft.

29.     The defendants named in this lawsuit somehow and unlawfully have acquired Mr. Penning's personal and financial information that had been in the possession of Mr. Tucker and

GTI.

30.     On May 11, 2017, defendants and their employee and agent placed a call to Mr. Penning's cellular telephone and left the following message on Mr. Penning's voice mail: "Hello, this is a message for Matt Penning. A notification was received from our courier that you are not at your residence or place of employment we have on file. Call us today at 844-365-7208 to reschedule delivery. Again, that number is 844-365-7208."

31.     On May 17, 2017, a return call was made to defendants at 844-365-7208. In the ensuing conversation, defendants' employee and agent, who identified herself as "Karen" with "EMS," also known as "Essex Mediation Services," made the following representations:

a)     Defendants were trying to contact Mr. Penning regarding a breach of contract claim filed in defendants' office.

b)     In September of 2011, a company named GTI Holdings made a payday loan to Mr. Penning with an account number of 203074597.

c)     EMS is a "mediation firm."

d)     Mr. Penning was being contacted to attempt to resolve the debt "before they render an appearance date."

e)     "They are trying to pursue this for forceful recovery."

f)     The current balance owed is $749.86.

g)     Mr. Penning was being "contacted by a process server, normally, they'll contact you and they provide you with our telephone number to see if we can give a stop order somehow in the meantime."

The call was then transferred to defendants' employee and agent, who identified himself as "Brett

Yarbor," a "supervisor," who made the following representations:

h)      "If you couldn't come up with the money normally what happens is they just put in the petition for judgment and judgments in your state, no different than New York or Ohio. Well most of the mid-western or northern states. What they normally do is the judgments are usually higher with all the court costs and what not and back compounded interest. You are either a) go for garnishment if you are working. It's usually between 20-25% of your wages. That is on the actual judgment balance which would be about 2 to 3 times your balance that we have here in our office. That's the first bad thing, and the second bad thing is since it is a payday loan involving a checking account, what they can do is if you get hit with a judgment is they can actually put your name and social security number through check systems where as though that can you know if you have any active checking or savings accounts, they can actually freeze those, or if you plan on opening a traditional checking or savings account, that may hinder the outcome on you know trying to get a bank account not to mention you know paying a higher balance and the judgment being placed on your credit report. Now, the thing is with this loan is it is years old, but in your state, they can still pursue this for like the next 2 and a half to 3 years. Matt, honestly, I'm not supposed to tell people this, but if you have like 6 months left in this before it was coming off your credit report or before the statute of limitations on payday loans, I would say hey look, you

know, maybe just try to keep cancelling out the court date until the 6
months are gone because then they couldn't come after you. But since
they've still got a good two and a half, close to three years that this matter
can actually be pursued, so what I would advise is maybe if your dealing
with financial hardship, Matt, like I can kind of bend the rules and this is
something we usually do for people on unemployment, social security,
disability, some of the senior citizens or what not. We can usually bend the
rules and drastically reduce the balance so low that they just settle it out
and then you know for reporting purposes, we'll show that the whole
balance is paid. Although, you know, only a portion was. That way
everyone's happy, no one goes into court, and the individual pays a
fraction of the balance, so that's really the ramifications of court. Now, if
you didn't show up or if you didn't sign off on any paperwork for court,
even if you didn't sign off, what would happen is you may end up with a
default judgment because you'd never even know about it and you'd miss
it without ever knowing. I always thought if you avoided any servers, any
process servers or anything like that, that you know if you didn't sign you
wouldn't have a date but that's not the outcome. Usually, they make 3 or 4
failed attempts and then you have a court date and not even know it in
your state, and I'm just talking about from experience when I defaulted on
my student loans years back, so I can see if it's something you'd want to
handle and maybe cut you a deal and get it reduced, I mean, I've been

known to reduce these anywhere between 25 up to 50% off the balance. So
if that is something you'd want to look into, I mean, I can probably do that
for you, if not, you know, you can always dispute the matter if you feel
necessary.

i)  "The balance it states is $750. If it goes into court, you total up paying
    about 2 to 3 times that. What I can at least do to you is I'm going to offer
    you two offers, okay? The $750 balance that we have here, if I considered
    you a hardship case, they will allow you to break that up into a four to six
    month period and I'm doing it by hardship."

j)  "The paperwork that originally we were sending out is for court. We're
    going to stop that, but you will get correspondence today. What we are
    going to send you today, once you set up everything, we are going to send
    you a docusign receipt, this is something new that we have been doing for
    like the last year. And they're awesome."

k)  "GTI Holdings, what they've done is they have exhausted their damage as
    second rate third party collection agency that they first hired. It has been
    exhausted through them. Then it was sold to a debt buyer. That debt buyer,
    they have an in-house collections. Once it goes delinquent for about 18
    months, they have the right to pursue the matter in court and that's when
    they contract us. So as of right now, GTI does not own the debt, however,
    we still let them know that it's paid, that way your red flag is lifted with
    them so they will not get any of your money. What you will see on your

13

billing statement sir is Levark Trademark. Levark trademark is our third-party billing, they're awesome. They are the ones that make us send these docusigns out to protect both parties on the payments. Now on your final payment, they will release a paid in full letter that we do email you. We also email it to the credit bureaus as well as any affiliates or payday loan lenders that you've used that is affiliated with GTI just in case you deal with them in the future, they'll know that you paid this."

l)      "The debt buyer that contracts the accounts to us, we have HDH and we also have JTM as well. I'm not sure what JTM stands for, but JTM is one of the bigger ones that we deal with and I think there is a national debt buyer as well. They usually just buy these things in bulk, some of them outsource the information out to collection agencies, and anything that they find, that is eligible for judgment, they'll send to us or about 10 other firms or agencies as well. JTM is one of the debt buyers. Our company here, we are contracted, and this is what your going to see in your letters. We are EMS. We are Essex Mediation Services. We're the ones that provide, we are like the middleman basically. We are the ones who do all of the paperwork for court as well as offer settlements as well. That's what we do, so we don't get any commissions here or anything like that. That's why I don't mind even reducing your balance is that there is no commission here."

The call was then transferred to another employee and agent of defendants, and for the purpose of

14

identifying the entities that were demanding the payment of money from Mr. Penning, a payment of $75.00 was made to defendants by debit card from an account with Chase Bank. According to Chase Bank, the payment was processed that same day by defendants as: "POS DEBIT TRADEMARK MANAGEMENT SOLUTIONS, 877-833-7972, NY."

32. On May 17, 2017, defendants sent an email to Mr. Penning with attached documents, requesting Mr. Penning's written authorization for defendants to debit the Chase Bank account. Mr. Penning refused to sign the documents. A copy of the email and documents are attached hereto as Exhibit A.

33. The above-described threats and representations made by defendants and their employees and agents were false and part of a scripted and unlawful debt collection practice that is ongoing and is currently being perpetrated by defendants to extort the payment of money from thousands of consumers across the country through the use of false threats, intimidation, and unlawful harassment, often times on debts that are not owed and through the use of unlawfully obtained account and personal information.

34. Defendants and their employees and agents failed to meaningfully identify themselves and their companies.

35. Defendants and their employees and agents falsely represented the amount of Mr. Penning's alleged debt.

36. Defendants and their employees and agents falsely represented and falsely implied that defendants have a legal department.

37. Defendants and their employees and agents falsely represented and falsely implied that lawyers were involved in the efforts to collect the alleged debt.

15

38.     Defendants and their employees and agents falsely represented and falsely implied that lawyers would become involved in the efforts to collect the alleged debt.

39.     Defendants and their employees and agents falsely represented and falsely implied that a lawsuit was going to be filed against Mr. Penning to collect the alleged debt.

40.     Defendants and their employees and agents falsely represented and falsely implied that a lawsuit already had been filed against Mr. Penning to collect the alleged debt.

41.     Defendants and their employees and agents falsely represented and falsely implied that they would be coming to Mr. Penning's residence.

42.     Defendants and their employees and agents falsely represented and falsely implied that they would be coming to Mr. Penning's place of employment.

43.     Defendants and their employees and agents falsely represented and falsely implied that they were working for the group of attorneys that were suing Mr. Penning.

44.     Defendants and their employees and agents falsely represented and falsely implied that Mr. Penning's account was owned by a group of attorneys.

45.     Defendants did not intend to file a lawsuit against Mr. Penning in any Michigan court in efforts to collect the alleged debt.  In fact, no defendant has ever filed any lawsuit in any Michigan court to collect any debt from any person.

46.     Defendants and their employees and agents falsely represented and falsely implied that debt buyers had retained defendants to file a lawsuit against Mr. Penning.

47.     Defendants and their employees and agents falsely represented and falsely implied that Mr. Penning's wages were going to be garnished.

48.     Defendants and their employees and agents falsely represented and falsely implied

16

that if sued, Mr. Penning would owe two or three times more than the current balance.

49.     Defendants and their employees and agents falsely represented and falsely implied that the statute of limitation regarding the account would not run for another two and one-half to three years.

50.     Defendants and their employees and agents falsely represented and falsely implied that derogatory information regarding the account was appearing on Mr. Penning's credit history.

51.     Defendants and their employees and agents falsely represented and falsely implied that if Mr. Penning paid money to defendants, then defendants would communicate information regarding the account to the consumer reporting agencies.

52.     Defendants and their employees attempted to collect from Mr. Penning a debt that Mr. Penning does not owe.

53.     Defendants and their employees attempted to collect from Mr. Penning a debt that defendants and their employees and agents have no legal right to collect.

54.     The FDCPA states that it is unlawful for a debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of any debt.  15 U.S.C. § 1692d.

55.     The FDCPA states that it is unlawful for a debt collector to use criminal means to harm the reputation of any person.  15 U.S.C. § 1692d(1).

56.     The FDCPA states that it is unlawful for a debt collector to place a telephone call without meaningful disclosure of the caller's identity.  15 U.S.C. § 1692d(6).

57.     The FDCPA states that it is unlawful for a debt collector to make any false representation regarding the character, amount, or legal status of any debt.  15 U.S.C. §

1692e(2)(A).

58.     The FDCPA states that it is unlawful for a debt collector to make any false representation regarding the compensation which may be lawfully received by any debt collector for the collection of any debt.  15 U.S.C. § 1692e(2)(B).

59.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that any individual is an attorney or that any communication is from any attorney.  15 U.S.C. § 1692e(3).

60.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action.  15 U.S.C. § 1692e(4).

61.     The FDCPA states that it is unlawful for a debt collector to threaten to take any action that cannot legally be taken or that is not intended to be taken.  15 U.S.C. § 1692e(5).

62.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that a sale, referral, or other transfer of any interest in a debt shall cause the consumer to lose any claim or defense to the payment of the debt.  15 U.S.C. § 1692e(6)(A).

63.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that a sale, referral, or other transfer of any interest in a debt shall cause the consumer to become subject to any practice prohibited by the FDCPA.  15 U.S.C. § 1692e(6)(B).

64.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that the consumer committed a crime or other conduct in order to disgrace the consumer.

15 U.S.C. § 1692e(7).

65.     The FDCPA states that it is unlawful for a debt collector to communicate to any person credit information which is known or which should be known to be false.  15 U.S.C. § 1692e(8).

66.     The FDCPA states that it is unlawful for a debt collector to use any false representation or deceptive means to collect or attempt to collect any debt.  15 U.S.C. § 1692e(10).

67.     The FDCPA states that it is unlawful for a debt collector to communicate in a communication with a consumer to fail to disclose that the communication is from a debt collector.  15 U.S.C. § 1692e(11).

68.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that documents are legal process.  15 U.S.C. § 1692e(13).

69.     The FDCPA states that it is unlawful for a debt collector to use any business, company, or organization name other than the true name of the debt collector's business, company, or organization.  15 U.S.C. § 1692e(14).

70.     The FDCPA states that it is unlawful for a debt collector to use unfair or unconscionable means to collect or attempt to collect any debt.  15 U.S.C. § 1692f.

71.     The FDCPA states that it is unlawful for a debt collector to collect any amount unless such amount is expressly authorized by the agreement creating the debt or permitted by law.  15 U.S.C. § 1692f(1).

72.     Defendants and their employees and agents have violated the FDCPA, 15 U.S.C. §§ 1692d, 1692d(1) and (6), 1692e, 1692e(2)(A), (2)(B), (3), (4), (5), (6)(A), (6)(B), (7), (8),

(10), (11), (13) and (14), and 1692f and 169f(1).

73.    Defendants and their employees and agents failed to timely send to Mr. Penning a notice containing the information required by 15 U.S.C. § 1692g(a).

74.    In connection with efforts to collect an alleged debt from Mr. Penning, defendants obtained personal information regarding Mr. Penning from a subscription-based internet database (www.accurint.com) ("Accurint") operated and maintained by LexisNexis Risk Management, Inc.

75.    Alternatively, in connection with efforts to collect an alleged debt from Mr. Penning, defendants obtained personal information regarding Mr. Penning from a subscription-based internet database (www.tlo.com) ("TLO") operated and maintained by TransUnion Risk and Alternative Data Solutions, Inc.

76.    The Accurint database is derived in part from non-public motor vehicle records. Accordingly, the Drivers Privacy Protection Act applies to searches made through Accurint. Subscribers to Accurint must sign an application stating that the subscriber will comply with the DPPA.  Further, every time a subscriber logs on to Accurint, the subscriber is confronted with a screen that requires the subscriber to affirmatively state the permissible purpose under the DPPA for which the subscriber is requesting the personal information.  A hyper-link at the bottom of the screen takes the subscriber to the actual, full text of the DPPA.

77.    The TLO database is derived in part from non-public motor vehicle records. Accordingly, the Drivers Privacy Protection Act applies to searches made through TLO. Subscribers to TLO must sign an application stating that the subscriber will comply with the DPPA.  Further, every time a subscriber logs on to TLO, the subscriber is confronted with a

screen that requires the subscriber to affirmatively state the permissible purpose under the DPPA

for which the subscriber is requesting the personal information. A hyper-link at the bottom of the

screen takes the subscriber to the actual, full text of the DPPA.

78. The DPPA was enacted in response to growing concerns over the ease with which

stalkers and other criminals could obtain personal information from state departments of motor

vehicles. *Reno v. Condon*, 528 U.S. 141, 143–44, 120 S.Ct. 666, 145 L.Ed.2d 587 (2000).

79. The DPPA states:

> (a) Procurement for unlawful purpose. – It shall be unlawful for any person
> knowingly to obtain or disclose personal information, from a motor vehicle
> record, for any use not permitted under section 2721(b) of this title.

> (b) False representation. – It shall be unlawful for any person to make false
>  representation to obtain any personal information from an individual's motor
> vehicle record.

18 U.S.C. § 2722.

80. The DPPA also states:

> "personal information" means information that identifies an individual, including
> an individual's photograph, social security number, driver identification number,
> name, address (but not the 5-digit zip code) [and] telephone number . . . .

18 U.S.C. § 2725(3).

81. The DPPA also states:

> A person who knowingly obtains, discloses or uses personal information, from a
> motor vehicle record, for a purpose not permitted under this chapter, shall be
> liable to the individual to whom the information pertains, who may bring a civil
> action in a United States district court.

18 U.S.C. § 2724(a).

82. The DPPA enumerates the only "permissible uses" for which personal

information may be obtained. 18 U.S.C. § 2721(b).

83. Defendants did not have a "permissible use" under the DPPA to obtain, disclose or use personal information regarding Mr. Penning.

84. Defendants used Accurint or TLO to obtain, disclose or use personal information regarding Mr. Penning.

85. Defendants made a false representation to Accurint or TLO to obtain personal information regarding Mr. Penning that was derived from Mr. Penning's motor vehicle record.

86. Alternatively, the entity that obtained Mr. Penning's personal information from Accurint or TLO and disclosed the personal information to defendants, made a false representation to Accurint or TLO to obtain personal information regarding Mr. Penning that was derived from Mr. Penning's motor vehicle record.

87. It is a crime to knowingly violate the DPPA. 18 U.S.C. § 2723.

88. Defendants knowingly obtained, disclosed and used Mr. Penning's personal information, from a motor vehicle record, for a purpose not permitted under the DPPA, and with willful or reckless disregard for the law.

89. No defendant had a "permissible use" as the phrase is defined in the DPPA to obtain, use or disclose Mr. Penning's personal information obtained from Accurint or TLO.

90. No defendant had Mr. Penning's consent, permission, authorization or waiver to obtain Mr. Penning's personal information from Accurint or TLO.

91. A civil action under the DPPA may be commenced within four years after the cause of action accrues. 28 U.S.C. § 1658(a); *Rasmusson v. Chisago County,* , 991 F.Supp.2d 1065, 1079 (D.Minn. 2014).

92. The DPPA imposes vicarious liability on principals for the acts of the actions of

their agents who act with apparent authority. *Margan v. Niles,* 250 F.Supp.2d 63, 77 (N.D.N.Y. 2003).

93.     Each defendant and each defendant's employees, managers, owners, agents, affiliates and co-conspirators had knowledge of, approved of, and ratified the use of the unlawful debt collection practices that are described in this complaint.

94.     Defendants and their employees, managers, owners, agents, affiliates and co-conspirators each have intentionally and wilfully violated the FDCPA, MRCPA and MOC.

95.     The FDCPA states in part, "It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors" and "to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged."  15 U.S.C. § 1692(e).

96.     Defendants and their employees, managers, owners, agents, affiliates and co-conspirators, to increase their business and profits, have knowingly chosen to use debt collection practices that violate the FDCPA and Michigan law, to the competitive disadvantage of those debt collectors who have chosen to abide by the law and refrain from using those same unlawful debt collection practices.

97.     As an actual and proximate result of the acts and omissions of defendants and their employees, managers, owners, agents, affiliates and co-conspirators, plaintiff has suffered actual damages and injury, including but not limited to, monetary loss, fear, stress, mental anguish, emotional stress, acute embarrassment, anxiety, loss of sleep, and suffering, for which he should be compensated in an amount to be established by jury and at trial.

## V. Claims for Relief

### Count 1 – Fair Debt Collection Practices Act

98. Plaintiff incorporates the foregoing paragraphs by reference.

99. Each defendant has violated the FDCPA. Each defendant's violations of the FDCPA include, but are not necessarily limited to, the following:

a) Defendants violated 15 U.S.C. § 1692d by engaging in conduct, the natural0 consequence of which is to harass, oppress, or abuse a person in connection with the collection of a debt;

b) Defendants violated 15 U.S.C. § 1692e by using false, deceptive and misleading representations and means in connection with the collection or attempted collection of a debt;

c) Defendants violated 15 U.S.C. § 1692f by using unfair and unconscionable means to collect or attempt to collect a debt from plaintiff; and

d) Defendants violated 15 U.S.C. § 1692g.

**Wherefore,** plaintiff seeks judgment against defendants for:

a) Actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

b) Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c) Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3); and

d) Such further relief as the court deems just and proper.

### Count 2 – Drivers Privacy Protection Act

100. Plaintiff incorporates the foregoing paragraphs by reference.

101. Each defendant has violated the DPPA, 18 U.S.C. § 2722(a) and (b).

**Wherefore,** plaintiff seeks judgment against defendants for:

a)   Actual damages, but not less than liquidated damages in the amount of $2,500.00, pursuant to 18 U.S.C. § 2724(b)(1);

b)   Punitive damages pursuant to18 U.S.C. § 2724(b)(2);

c)   Reasonable costs and attorneys' fees pursuant to18 U.S.C. § 2724(b)(3);

d)   An injunction prohibiting defendants from further obtaining plaintiff's personal information, pursuant to 18 U.S.C. § 2724(b)(4);

e)   An order requiring defendants to provide plaintiff with the original and all copies of any and all documents of any kind that contain any of plaintiff's personal information, pursuant to 18 U.S.C. § 2724(b)(4);

f)   An injunction prohibiting defendants from disseminating plaintiff's personal information to any other entity, pursuant to 18 U.S.C. § 2724(b)(4).

g)   An order requiring defendants to provide plaintiff with the original of all documents pursuant to which defendants obtained plaintiff's stolen account information, so that plaintiff may take steps to determine the identity of all entities that have had possession of his stolen account information and thereby enable plaintiff to pursue those entities in efforts to protect plaintiff's credit identify from being further compromised and harmed.

### Count 3 – Michigan Regulation of Collection Practices Act

102.   Plaintiff incorporates the foregoing paragraphs by reference.

103.   Each defendant has violated the MRCPA.  Each defendant's violations of the MRCPA include, but are not necessarily limited to, the following:

a)      Defendants violated M.C.L. § 445.252(a) by communicating with a debtor in a misleading or deceptive matter, including simulated judicial process;

b)      Defendants violated M.C.L. § 445.252(e) by making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt;

c)      Defendants violated M.C.L. § 445.252(e) by concealing or not revealing the purpose of a communication when it is made in connection with collecting a debt;

d)      Defendants violated M.C.L. § 445.252(f) by misrepresenting in a communication with a debtor the following: (i) the legal status of a legal action being taken or threatened, (ii) the legal rights of a creditor or debtor, and (iii) that the nonpayment of a debt will result in the debtor's arrest or imprisonment, or the seizure, garnishment, or sale of the debtor's property;

e)      Defendants violated M.C.L. § 445.252(g) by communicating with a debtor without accurately disclosing the caller's identity;

f)      Defendants violated M.C.L. § 445.252(n) by using a harassing, oppressive, or abusive method to collect a debt; and

g)      Defendants violated M.C.L. § 445.252(q) by failing to implement a procedure designed to prevent a violation by an employee.

**Wherefore,** plaintiff seeks judgment against defendants for:

a)      Actual damages pursuant to M.C.L. § 445.257(2);

b)      Treble the actual damages pursuant to M.C.L. § 445.257(2);

c)      Statutory damages pursuant to M.C.L. § 445.257(2);

d)      Reasonable attorney's fees and court costs pursuant to M.C.L. § 445.257(2); and

e)      Equitable relief pursuant to M.C.L. § 445.257(1).

### Count 4 – Michigan Occupational Code

104.    Plaintiff incorporates the foregoing paragraphs by reference.

105.    Each defendant has violated the MOC.  Each defendant's violations of the MOC include, but are not necessarily limited to, the following:

a)      Defendants violated M.C.L. § 339.915(a) by communicating with a debtor in a misleading or deceptive matter, including simulated judicial process;

b)      Defendants violated M.C.L. § 339.915(e) by making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt;

c)      Defendants violated M.C.L. § 339.915(e) by concealing or not revealing the purpose of a communication when it is made in connection with collecting a debt;

d)      Defendants violated M.C.L. § 339.915(f) by misrepresenting in a communication with a debtor the following: (i) the legal status of a legal action being taken or threatened; (ii) the legal rights of a creditor or debtor; and (iii) that the nonpayment of a debt will result in the debtor's arrest or imprisonment, or the seizure, garnishment, attachment or sale of the debtor's property;

e)      Defendants violated M.C.L. § 339.915(g) by communicating with a debtor without accurately disclosing the caller's identity;

f)      Defendants violated M.C.L. § 339.915(n) by using a harassing, oppressive, or abusive method to collect a debt;

g)      Defendants violated M.C.L. § 339.915(q) by failing to implement a procedure designed to prevent a violation by an employee; and

27

h)      Defendants violated M.C.L. § 339.918.

**Wherefore,** plaintiff seeks judgment against defendants for:

a)      Actual damages pursuant to M.C.L. § 339.916;

b)      Treble the actual damages pursuant to M.C.L. § 339.916;

c)      Statutory damages pursuant to M.C.L. § 339.916;

d)      Equitable relief pursuant to M.C.L. § 339.916; and

e)      Reasonable attorney's fees and court costs pursuant to M.C.L. § 339.916(2).

### Count 5 – Invasion of Privacy

106.    Plaintiff incorporates the foregoing paragraphs by reference.

107.    Defendants' acts and omissions were undertaken willfully, maliciously, intentionally, knowingly, and in gross or reckless disregard for plaintiff's rights.

108.    Defendants' acts and omissions were extreme and outrageous.

109.    Defendants' acts and omissions have caused plaintiff's personal and financial information to be peddled around the country to con men and criminals, exposing plaintiff to repeated and future harm, credit identity theft, and other invasions of his privacy.

110.    As an actual and proximate result of defendants' invasion of plaintiff's right to privacy, plaintiff has suffered, and will continue to suffer, actual damages for which he should be compensated.

**Wherefore**, plaintiff seeks judgment against defendants for:

a)      Actual damages;

b)      Exemplary damages;

c)      Equitable relief, including an injunction, enjoining defendants from

communicating plaintiff's personal information to any entity;

d)      Costs and reasonable attorney's fees; and

e)      Such further relief as the court deems just and proper.

### Demand for Trial by Jury

Plaintiff demands trial by jury.

Dated: June 26, 2017                    /s/ Phillip C. Rogers
                                        Phillip C. Rogers (P34356)
                                        Kevin J. Rogers (P81303)
                                        Attorneys for Plaintiff
                                        40 Pearl Street, N.W., Suite 336
                                        Grand Rapids, Michigan 49503-3026
                                        (616) 776-1176
                                        ConsumerLawyer@aol.com